IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
SHANE WILLIAMS,                    )
                                   )
              Plaintiff,           )
                                   )
      v.                           )      Case No. 12-1108-RDR
                                   )
MICHAEL J. ASTURE,                 )
Commissioner of Social Security    )
                                   )
              Defendant.           )
_____)
```

**MEMORANDUM AND ORDER**

On June 5, 2008, plaintiff filed claims for disability insurance benefits and supplemental security income (SSI) benefits, alleging disability beginning on April 15, 2008. On August 26, 2010, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on September 13, 2010 that plaintiff was not qualified to receive benefits because he was not "disabled" as required under the law. The Appeals Council denied review and the ALJ's decision was then adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's applications for benefits.

I. STANDARD OF REVIEW

To qualify for disability insurance and SSI benefits, a claimant must establish that he is "disabled" under the Social

Security Act, 42 U.S.C. §§ 423(a)(1)(E), 1381a.  This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A); § 1382c(a)(3)(A).  But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A); 423(c).  A claimant becomes eligible for SSI benefits in the first month where he is both disabled and has an application on file.  20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1270 (D.Kan. 2004).  "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994)(quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may

2

not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 10-17).

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520(a) and 416.920 for determining eligibility for disability insurance and SSI benefits. The ALJ found first that plaintiff has met the insured status requirements of the Social Security Act through December 31, 2010 and that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, April 15, 2008.

Second, the ALJ found that plaintiff has the following severe medical impairments: degenerative disc disease of the lumbar spine (with prior compression fractures) as well as a depressive disorder.[1]

Third, he determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the social security regulations.

---

[1] It appears that the ALJ meant to say thoracic spine, instead of lumbar spine. But, the court does not believe this mistake is material.

Fourth, the ALJ found that plaintiff had the residual functional capacity (RFC): to lift and carry up to 20 pounds occasionally and 10 pounds frequently; to stand and walk 6 hours out in an eight-hour workday, as well as sit for 6 hours out in an eight-hour workday. In addition, the ALJ found that plaintiff can perform all postural activities occasionally, but that plaintiff should not perform overhead work or work around hazards, like unprotected heights and dangerous moving machinery. Further, the ALJ decided that plaintiff should not work around extremes of heat or cold and that he is limited to repetitive 1 to 3-step work at a specific vocational preparation (SVP) level of 2 or below. As regards plaintiff's mental limitations, the ALJ determined that plaintiff had no significant restrictions in activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence and pace. He further decided that plaintiff's mental condition did not cause repeated episodes of decompensation of extended duration. With this RFC in mind, the ALJ found that plaintiff could not perform any past relevant work.

Finally, at the fifth step, the ALJ concluded, after considering plaintiff's age, education, work experience, and RFC, that there were jobs which existed in significant numbers in the national economy that plaintiff could perform. In making

4

this finding, the ALJ relied upon a vocational expert who testified that plaintiff would be able to perform the requirements of a mail clerk, a ticket taker and an electronics assembler.

III.  MEDICAL BACKGROUND

Plaintiff was an over-the-road truck driver until about April 15, 2008, when he suffered a fainting spell while he was outside of his parked truck.  Thereafter, the medical record in this case shows consistent complaints of dizziness, vertigo, as well as impaired concentration, attention and memory.  Plaintiff has also complained of back pain in the thoracic region, hip pain, and shoulder pain, as well as numbness or swelling in his fingers and toes.  As time has passed, plaintiff has manifested increased difficulty with walking and other physical activity.  Plaintiff started using a cane in 2009, a year or so after the fainting episode.  He testified in 2010 before the ALJ that he has significant problems walking more than one hundred feet and that he cannot stand or sit for more than 15 minutes.  Plaintiff was diagnosed in 2010 as having major depression.

The objective medical evidence supporting or explaining plaintiff's physical symptoms is not compelling or definitive. MRIs of plaintiff's brain show slight hyperintensities and some bilateral white matter signal abnormalities.  Images of his

spine show compression fractures of some age and some mild disc bulging.

A state agency physician reviewed and approved an assessment of plaintiff performed in mid-2008 which concluded that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. (Tr. 320-327). The assessment stated that plaintiff could sit or stand for 6 hours in an 8-hour workday and that plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl. Id. An examination of plaintiff about that time indicated that plaintiff had full range of motion in his lumbar spine and that his gait and station were stable. Plaintiff did not use an assistive device at that time and had no difficulty completing various maneuvers such as walking, hopping and squatting during the examination. (Tr. 318).

Plaintiff's treating physician, Dr. Carson, stated (at Tr. 406-07) in May 2010: that plaintiff can perform less than sedentary work; that plaintiff can lift less than 10 pounds occasionally and lift less than five pounds frequently; that plaintiff can stand less than 15 minutes continuously and less than 1 hour throughout an 8-hour day; that plaintiff can sit continuously less than one hour at a time and can sit only 5 hours throughout an 8-hour work day; that he must alternate sitting and standing; that plaintiff can never climb, balance, stoop, kneel, crouch or reach; and that he can only occasionally

crawl, handle and finger objects.   According to the report, plaintiff needs to lie down every five to fifteen minutes because of pain and that this pain causes a decrease in plaintiff's concentration and persistence.   Dr. Carson based these conclusions upon plaintiff's statements to the doctor. This evaluation was relatively the same as one Dr. Carson completed in October 2009, again on the basis of plaintiff's statements to him. (Tr. 371-74).

Dr. Veloor, who performed a consulting examination in July 2009, stated in a report dated June 13, 2010 that: plaintiff can lift five pounds frequently and 10 pounds occasionally; that plaintiff can sit or stand alternating for four hours; that plaintiff can stand and/or walk continuously for 1 hour; that plaintiff can sit continuously for 1 hour; that plaintiff can occasionally climb, stoop, reach, and handle; and that plaintiff can frequently finger and feel.   (Tr. 409-10).   During plaintiff's examination by Dr. Veloor in July 2009, plaintiff was in no apparent distress and his gait was essentially normal. There was some tenderness along the thoracic region of plaintiff's spine, but the lumbar spine range of motion was normal if plaintiff bent his knees.   Straight leg raise was negative bilaterally.   Grip strength was 130 pounds on the right side and 110 pounds on the left side. (Tr. 390-91).   Dr. Veloor commented that he thought plaintiff could work in a sedentary

capacity if he could alternate between sitting and standing.  He also commented that plaintiff was limited in his ability to engage in heavy lifting and in reaching overhead.  (Tr. 391).

In April 2009, plaintiff was examined by Dr. Zhao.  (Tr. 384-85).  Dr. Zhao observed that plaintiff was in no acute distress.  His gait was normal and light touch was normal.  There was no significant vertigo, passing out or focal weakness.  Plaintiff reported some difficulty concentrating, but there were no significant findings from the various tests reviewed by Dr. Zhao.  Plaintiff's gross mental functions were essentially normal.  There was normal strength in his upper and lower extremities.  There was no mention of back pain in Dr. Zhao's report.

In April 2010, plaintiff was evaluated by Dr. Wang.  (Tr. 411-13).  Plaintiff complained of constant back pain that was often severe, chronic severe fatigue which made him unable to walk a block, and cognitive decline.  Plaintiff also mentioned "minor pain" in his hands and joints because of arthritis.  After psychological testing, Dr. Wang found that plaintiff had a moderate impairment in attention and concentration.  Plaintiff was diagnosed with major depressive disorder and significant impairment in sustained attention, probably secondary to depression, sleeping disturbances, and chronic mental fatigue.  Dr. Wang could not rule out the contribution of a mild organic

8

impairment of the brain to plaintiff's attention deficits. After testing, Dr. Wang reported that plaintiff showed normal word comprehension, auditory comprehension, intellectual function, memory and learning, conceptual reasoning, executive functions and psychomotor speed.

Plaintiff's treating doctor, Dr. Carson, approved plaintiff for a scooter.  Plaintiff, who is in his late forties, attended college in the fall of 2009 and spring 2010.  Initially, he received good grades, but in the second semester his grades deteriorated substantially.

IV.  THE ALJ PROPERLY ASSESSED PLAINTIFF'S RFC.

Plaintiff argues that the ALJ did not properly formulate plaintiff's RFC for a number of reasons.  First, plaintiff contends that, while the ALJ did not adopt the state agency's physician's opinion, he failed to discuss what weight he gave to the opinion in contravention of Social Security Ruling (SSR) 96-8p.  Although this may be a correct interpretation of the ALJ's duties under SSR 96-8p, plaintiff does not suggest that this error was detrimental to plaintiff's position or that a remand for the ALJ to review and discuss that opinion could conceivably produce a different result.  The state agency physician assessed plaintiff as having a more robust RFC than did the ALJ. Therefore, the court shall reject this argument against the ALJ's RFC assessment. See Prochaska v. Barnhart, 454 F.3d 731,

737 (7th Cir. 2006)(finding harmless error where there is no demonstration of how factor not discussed by ALJ further impaired claimant's ability to work); Adams v. Astrue, 880 F.Supp.2d 895, 910-11 (N.D.Ill. 2012)(remand is not required for consideration of doctor's reports that are consistent with ALJ's RFC findings); Kersey v. Astrue, 614 F.Supp.2d 679, 696 (W.D.Va. 2009)(failure to discuss doctor's opinion is harmless when a different administrative result would not have been reached).

Next, plaintiff contends that the ALJ failed to properly analyze and discuss the opinion of Dr. Veloor.  A fair reading of the ALJ's decision indicates that the ALJ differed from Dr. Veloor's assessment because he believed it was inconsistent with the objective medical evidence and with plaintiff's college attendance.  Under SSR 96-8p:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . .  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7.  While plaintiff complains that the ALJ failed to identify "the weight assigned to Dr. Veloor" (Doc. No. 12, p. 12) and that the ALJ's discussion was "simply too

10

vague" (Doc. No. 12, p. 13), plaintiff does not explain exactly how the ALJ failed to follow the Social Security Ruling.   In other words, plaintiff's criticism is somewhat vague itself. Contrary to the suggestion in plaintiff's brief, SSR 96-8p does not require that an ALJ identify the weight assigned to a doctor's opinion.[2]

The ALJ's decision discussed the findings of the various doctors who examined plaintiff and the results of various medical tests.   He discussed plaintiff's college attendance, and plaintiff's good grades and "academic struggles."   (Tr. 13). The ALJ stated that the objective medical record "poorly supports" Dr. Carson's assessment.   Id.   He stated that Dr. Veloor's evaluation was:

> more aligned with the objective medical record [than Dr. Carson's] . . . [but that] Dr. Veloor's assessment . . . was too restrictive in some areas [and that] Dr. Veloor did not account for the fact that [plaintiff] was taking college courses in 2010 and had demonstrated the physical and mental ability to handle these college courses.   Furthermore, other assessments of [plaintiff] conducted in mid 2010 reflect the [plaintiff] to be functioning relatively well.   During counseling sessions with a therapist, [plaintiff] complained of some chronic pain and a depressed mood, but he did not indicate these problems were overwhelming and he was still able to attend his college classes.

(Tr. 14).   In addition, the ALJ commented that:

---

[2] SSR 96-8p does discuss when a treating source's opinion is to be given "controlling weight."   Plaintiff does not argue here that Dr. Carson, plaintiff's treating physician, should be given controlling weight or that the ALJ improperly analyzed Dr. Carson's opinion.

actual examinations of [plaintiff] show [plaintiff] to be relatively capable from a physical standpoint. Many of the limitations found in this case are based simply upon [plaintiff's] subjective complaints; however, such complaints lack support from the objective medical record. For example, many of Dr. Carson's findings appear to be restatements of [plaintiff's] subjective complaints and cannot be correlated with objective medical/clinical findings. Furthermore, [plaintiff's] claims of overwhelming pain and restriction are inconsistent with his limited treatment history. [Plaintiff] also has been taking college classes during a period in which he alleges complete disability. Obviously, [plaintiff's] ability to take classes, complete assessments, and obtain a 3.5 for the first semester is incongruent with his assertions of disability.

(Tr. 15). The court believes this provides an adequate narrative discussion explaining why the ALJ's RFC differs from that set forth in the reports of Dr. Carson and Dr. Veloor and how the ALJ considered the inconsistencies and ambiguities in the case record.

Plaintiff argues that the ALJ did not adequately analyze or discuss the evidence that plaintiff uses a cane and was prescribed a motorized scooter. (Doc. No. 12, p. 14). We disagree. The ALJ implicitly considered this evidence which was mentioned in reports the ALJ reviewed and in the transcript of plaintiff's testimony. But, the ALJ decided that plaintiff's relatively rapid decrease in walking ability and stamina was not congruent with the objective medical evidence and limited treatment history. Additionally, plaintiff asserts that the ALJ failed to account for plaintiff's limited range of motion in his

shoulder and manipulative limitations.   However, the ALJ did place restrictions in his RFC assessment upon plaintiff's overhead work.   The record does not provide objective medical evidence supporting a fingering limitation.   Nor does the record show that plaintiff suffers from postural or manipulative limitations which would restrict his capacity for substantial gainful employment in such jobs as mail clerk and ticket taker.

Plaintiff's next argument against the ALJ's RFC formulation is that the analysis of plaintiff's mental limitations was flawed.   Plaintiff particularly criticizes the absence of an opinion from a medical source addressing plaintiff's ability to work in light of his mental limitations.   Plaintiff cites Fleetwood v. Barnhart, 211 Fed.Appx. 736 (10th Cir. 2007) in support of his position.   Defendant responds that: the ALJ was not required to base his mental RFC on a medical opinion; the ALJ reasonably determined that plaintiff's pain and depression were not overwhelming; and the ALJ accounted for plaintiff's limitations in concentration in his RFC assessment.   Defendant cites Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012) in support of his position.

Plaintiff does not deny any of defendant's responses, but contends that the record contains no opinion as to plaintiff's functional limitations to support the conclusions drawn by the ALJ.   Plaintiff contends that the ALJ should have ordered a

mental consultative examination instead of relying upon the ALJ's own interpretation of the record.

It is undenied that the ALJ reviewed and considered the reports from Dr. Zhao, Dr. Wang and Barbara Vandiver as regards plaintiff's mental health. According to the ALJ: Dr. Wang concluded that plaintiff had a significant impairment in sustained concentration; Dr. Zhao noted that plaintiff had some cognitive dysfunction; and during counseling sessions Ms. Vandiver commented that plaintiff complained of some chronic pain and depressed mood, but did not indicate these problems were overwhelming. (Tr. 13-14). The ALJ drew upon Dr. Wang's report when he stated:

> [Plaintiff] displayed normal neuropsychological functions in sensory functions of visual, auditory, tactile, and olfactory modalities, eye/hand coordination with each hand, handgrip strength of both hands, spontaneous speech in terms of articulation and fluency, and auditory comprehension in following commands. Additionally the claimant had normal word reading comprehension, vocabulary, general intellectual functions, memory and learning, conceptual reasoning, visual-spatial functions, and executive functions in terms of sequencing, organization, planning, self-initiation in generating goal-oriented responses, and psychomotor speed. Overall, this assessment, like others, showed [plaintiff] to be relatively capable from a mental standpoint despite some limitations.

(Tr. 14). Of course, the ALJ also discussed and considered plaintiff's college attendance in his decision.

Plaintiff's depression and difficulties with concentration were further explored during the hearing before the ALJ, where plaintiff's counsel had the opportunity to develop the record. Counsel could have requested a consultative examination, but there is no indication that this was done.

This case is not like Fleetwood, where the ALJ primarily relied upon a check-the-box form to support his RFC finding. The ALJ in this case found support for his findings in reports from various medical sources and from non-medical information. The need for a consultative examination by a mental health expert is not clearly established, for as stated in Chapo, "there is no requirement . . . for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." 682 F.3d at 1288.  Here, we conclude that the ALJ has adequately explained and supported the mental functional limitations upon which he based his decision and that his failure to order a consultative examination was not a legal error.

Plaintiff finally argues that the ALJ's RFC determination is improper because the ALJ did not consider plaintiff's vertigo, compression fractures of the thoracic spine and organic brain impairment.  The court rejects this argument.  The ALJ's opinion states that he carefully considered the "entire record," "all symptoms" and the "objective medical evidence and other

evidence."    (Tr.  15).    The  ALJ  specifically  mentioned plaintiff's  dizziness,  complaints  of  back  pain,  history  of compression  fractures,  the  MRI  images  of  plaintiff's  brain,  and the  possibility  of  a  mild  organic  impairment.    (Tr.  13-14). Plaintiff's  vertigo  and  dizziness  were  discussed  in  plaintiff's testimony  before  the  ALJ.    (Tr.  31-32).  The  RFC  in  this  case places  limitations  upon  plaintiff's  working  around  unprotected heights  and  dangerous  moving  machinery,  restricts  his  functions to  relatively  simple,  repetitive  work,  and  obviously  places limits  upon  plaintiff's  lifting  and  mobility.    These  limits further  reflect  the  ALJ's  consideration  of  all  of  plaintiff's alleged  conditions.    According  to  the  ALJ,  "[m]any  of  the limitations  found  in  this  case  are  based  simply  upon [plaintiff's]  subjective  complaints."  (Tr.  15).  So  plaintiff's statements  to  doctors  and  to  the  ALJ  were  evaluated  as  well.    To sum  up,  our  reading  of  the  record  does  not  support  plaintiff's claim  that  the  ALJ  failed  to  consider  plaintiff's  vertigo, compression  fractures,  and  possible  organic  brain  impairment.

    We  conclude  that  plaintiff  has  not  established  a  legal error  or  other  grounds  to  reverse  or  remand  for  reconsideration of  the  ALJ's  assessment  of  plaintiff's  RFC.

V.   THE ALJ'S EVALUATION OF PLAINTIFF'S CREDIBILITY WAS NOT
IMPROPERLY CONDUCTED.

Plaintiff contends that the ALJ improperly performed his credibility analysis because he placed too much emphasis upon: plaintiff's limited treatment history; plaintiff's ability to attend college and care for his children; and plaintiff's financial obligation toward his children.

The ALJ did not give plaintiff's complaints of pain and disability full credibility because the ALJ thought they lacked support from the objective medical record.   (Tr. 15).   In addition, the ALJ mentioned plaintiff's limited treatment history, his college attendance, his care of a 17-month-old child and his pecuniary interest in helping to support his children.   Id.

Credibility determinations are the province of the ALJ and must be upheld if they are supported by substantial evidence. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001).   The factors considered by ALJ in this matter were not improper.   An ALJ may consider the objective medical record, activities of the claimant (such as attending school), child care activities, and pecuniary interest.   In Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995), the court noted that an ALJ may consider such factors as:

> [T]he levels of medication and their effectiveness,
> the extensiveness of the attempts (medical and

> nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective
> measures of credibility that are peculiarly within the
> judgment of the ALJ, the motivation of and
> relationship between the [plaintiff] and other
> witnesses, and the consistency or compatibility of
> nonmedical testimony with objective medical evidence.

(interior quotation omitted).  The factors considered by the ALJ

in this case fall within this description.  See also, Carmickle

v. Commissioner, Social Security Administration, 533 F.3d 1155,

1161 (9th Cir. 2008)(mentioning college attendance as a

credibility factor); Schmidt v. Astrue, 496 F.3d 833, 844 (7th

Cir. 2007)(mentioning college attendance and babysitting as

credibility factors).

Plaintiff contends that the ALJ should have considered

plaintiff's limited financial resources which may have

restrained his ability to access medical treatment and that

there is no evidence that plaintiff has child support payments,

only that plaintiff has shared custody of one child and full

custody of another.

These arguments do not subtract from the substantial

evidence in support of the ALJ's credibility analysis.  In spite

of plaintiff's financial difficulties, he was able to receive

medical treatment or examinations a number of times from

different persons.  Moreover, unlike the situation in the case

cited by plaintiff (Madron v. Astrue, 311 Fed.Appx. 170, 178

(10th Cir. 2009)), the ALJ in this case found that plaintiff's

18

limited treatment history was not consistent with claims of overwhelming pain and restriction - - not that plaintiff failed to obtain prescribed treatment. In Madron, the ALJ doubted the plaintiff's credibility because he did not obtain an MRI which was recommended by a doctor, when the plaintiff claimed an inability to pay. Here, the ALJ simply reflected upon the absence of treatment consistent with plaintiff's claims of pain and restriction – not that doctors ordered treatment which plaintiff failed to obtain. Furthermore, in plaintiff's testimony, the only reference to a financial barrier to treatment relates to one medicine he is supposed to take in combination with another to control his dizziness or vertigo. (Tr. 29, 32). Vertigo was not considered a severe impairment in this case and plaintiff has not challenged that finding. Finally, whether or not the ALJ's description of plaintiff's child support obligations is completely accurate, it cannot be denied that plaintiff has a pecuniary interest in obtaining more money to support his children.

Finally, plaintiff makes a new argument in his reply brief which contends that the ALJ inaccurately claimed that "[e]xcept for Dr. Carson, [p]laintiff's family practitioner, the medical opinion evidence indicated that [p]laintiff was capable of performing work activity." Doc. No. 20, p. 7 (citing Tr. 15). Plaintiff asserts that this statement is not entirely true

because Dr. Veloor's estimation of plaintiff's RFC (which indicated a range of sedentary work) would not allow plaintiff to perform the jobs listed by the vocational expert.  This point does not require remand for reconsideration of the ALJ's credibility analysis because the ALJ did not adopt Dr. Veloor's RFC calculation and the distinction drawn by plaintiff does not address a significant aspect of the ALJ's credibility assessment.

To summarize, the ALJ's credibility analysis is linked to specific findings of fact and supported by substantial evidence. Because the ALJ's conclusions are reasonable and consistent with the evidence, the court will not replace the ALJ's findings with different findings, even if those findings might also be considered reasonable upon this record.  Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

VI. CONCLUSION

Defendant's judgment denying plaintiff's claims for benefits shall be affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 19th day of March, 2013, at Topeka, Kansas.

s/Richard D.Rogers
United States District Judge